UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. SCOTT

                    Plaintiff,                          Case No.  10-14937

v.                                                      SENIOR UNITED STATES DISTRICT JUDGE
                                                        ARTHUR J. TARNOW

DANIEL BURRESS, ET AL.
                                                        MAGISTRATE JUDGE DAVID R. GRAND
                    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [13], [18], [21], [41],
DENYING DEFENDANTS' MOTIONS FOR PERMANENT INJUNCTION [14], [19],
GRANTING MOTION FOR SANCTIONS [17], AND DISMISSING CLAIMS AGAINST
DEFENDANT COOK PURSUANT TO 28 U.S.C. § 1915(G)**

        Before the Court are Defendants Daniel Burress, Thomas Cremonte, Leslie LNU, and

William Vailliencourt's Motion to Dismiss [13], Motion for Permanent Injunction [14], and Motion

for Sanctions [17], Defendant Brian Lavan's Motion to Dismiss [18] and Motion for Permanent

Injunction [19], Defendant Jim Pasenski's Motion to Dismiss [21], and Defendant Christopher

Corriveau's Motion to Dismiss [41].

        Plaintiff alleges three counts:

(1) Retaliation, based upon Plaintiff's numerous civil suits against the various Defendants.  Plaintiff

alleges that Defendants have "south to deprive Plaintiff of his Constitutional right to petition the

government for redress, retaliated against plaintiff for exercising that right and took an adverse

action the Plaintiff."

(2) Unreasonable Search and Seizure.  This count is based entirely on the actions of Defendant

Steinaway and has already been dismissed by this Court [53].

(3) Conspiracy.  Plaintiff alleges that Defendants have violated his "rights to petition the government

for redress under the First Amendment . . . ."  Plaintiff alleges that Defendants "conspired with each

other by framing plaintiff by knowingly causing false charges to be brought against plaintiff . . . ."

Plaintiff alleges that Defendants "agreed with each other upon a single plan to inure plaintiff . . . ."

## Procedural Background

Plaintiff filed the instant complaint on December 13, 2010, proceeding *in forma pauperis*. Defendants Burress, Cremonte, Leslie, and Vailliencourt filed their Motion to Dismiss [13] and Motion for Permanent Injunction [14] on March 2, 2011, as well as a Motion for Sanction [17] on March 10, 2011.  Defendant Lavan filed a Motion to Dismiss [18] and Motion for Permanent Injunction [19] on March 28, 2011.  Defendant Pasenski filed a Motion to Dismiss [21] on March 29, 2011.  Defendant Corriveau filed a Motion to Dismiss [41] on May 24, 2011.

## Factual Background

### Original 1987 Sentencing and 1995 Lawsuit

This case arises out of repeated lawsuits by Plaintiff against some of the defendants in this case, notably Defendants Lavan, Burress, and Cremonte.  In 1987 Plaintiff was sentenced by Defendant Burress, a now-retired circuit court judge of Livingston County, for violating state drugs laws.[1]  In 1995, Plaintiff filed a case alleging retaliation and conspiracy against Defendant Burress and others, *Scott v. Bair*, 1:95-cv-571 (W.D. Mich. 1995).  After three separate appellate proceedings and the dismissal of all defendants except Bair, the case was tried by a jury in March, 2005.  The jury found against Plaintiff as to all claims.  Plaintiff subpoenaed Defendant Burress on or about January 4, 2005, as part of the 1995 case.

---

[1] The Court draws certain facts from the Plaintiff's previously filed companion case, *Scott v. Burress, et al.*, 06-13916.  A court may take judicial notice of public records and government documents.  *United States ex. rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).

2

**1997 Order Barring State Lawsuits**

In 1997, Judge William E. Collette entered an opinion and order in *Scott v. Mich. Dep't of Corrections*, Livingston Circuit Case No. 97-15667-AA, which barred Plaintiff from "filing any future lawsuits in any Michigan Circuit Court or any Michigan Court of Claims without first seeking and obtaining permission from the Chief Circuit Court Judge and Court of Claims Judge Peter D. Houk." The Michigan Court of Appeals has upheld this order. *See Scott v. Gatesman*, 2012 WL 336963 (Mich. App. Feb. 2, 2012).

**2005 Parole Hearing and Deposition**

Subsequently, a parole hearing was held in July of 2005 at which Plaintiff was scheduled to be released on August 10, 2005. On August 5, 2005, Defendant Cremonte, a lieutenant with the Livingston County Sheriff's Department, wrote a letter to the Michigan State Police requesting surveillance of Plaintiff after he was paroled. In the letter Cremonte stated that he had received information from the FBI and informants that Plaintiff intended to hire persons to kill Defendants Lavan and Burress. The letter was forwarded by the Michigan State Police to the parole board, who revoked Plaintiff's parole. Plaintiff was later released in 2006.

**2006 Lawsuit**

After his release, Plaintiff filed a case before this Court, *Scott v. Burress, et al.*, 2:06-cv-13916 (E.D. Mich. 2006) on September 1, 2006.[2] Defendants Lavan, Cremonte, and Burress were all named as defendant in the 2006 case. In his complaint, Plaintiff alleged conspiracy, retaliation, and slander/defamation. Plaintiff based his claims on his deposition of Burress in 2005. He argued that the defendants in his new case had retaliated against him for deposing Burress by conspiring to write the letter to the Michigan State Police. Plaintiff argued that the defendants intended that

---

[2]In his complaint, Plaintiff incorrectly states the date as "on or about August 30, 2007."

3

the letter be seen by the parole board and sought to delay his parole.  Through a combination of rulings on the merits, untimely filings, and failing to keep a current mailing address, Plaintiff's case was ultimately dismissed by this Court.

**2007 Arrest by Already-Dismissed Defendant Steinaway**

On September 2, 2007, Plaintiff was pulled over by already-dismissed Defendant Steinaway. Plaintiff had driven through a blinking red light without stopping as required by the Michigan Motor Vehicle Code.  According to the incident report and criminal trial transcript, Steinaway noticed an open, half-full container of beer on the floor in the backseat.  Steinaway noticed that Plaintiff appeared to have glassy eyes and slurred speech, and stated that he smelled alcohol coming from Plaintiff.  Plaintiff failed preliminary sobriety tests and refused to take a breathalyser test at the scene.  Plaintiff consented to take a blood test and was transported to a hospital for that purpose. Plaintiff withdrew his consent and Steinaway obtained warrant for the blood test.  Ultimately, the blood test revealed the presence of cocaine in Plaintiff's bloodstream, and Plaintiff was charged with operating a vehicle while intoxicated by a controlled substance and driving with an open container. Plaintiff, in the instant complaint, disputes Steinaway's version of events and avers that later "independent testing" found no controlled substances in his blood.[3]

Plaintiff represented himself at trial, after refusing his appointed counsel, who he alleges was "socially close to defendants [in the instant case] Burress and Lavan."  At trial on the criminal misdemeanor charges, Plaintiff attempted to establish that Steinaway had personal bias against him, and also attempted to link Steinaway with Defendant Cremonte.  Plaintiff was nevertheless

---

[3]The independent testing was not allowed into evidence at the criminal trial because the prosecutor was not made aware of it until the day of trial; however, the prosecutor later stated that the independent lab report did in fact reflect the presence of cocaine in Plaintiff's bloodstream.  Plaintiff has not provided the independent test to this Court.

4

convicted of both crimes.  Plaintiff alleges in the instant complaint that, contrary to the finding of the jury, Defendant Steinaway lied about Plaintiff's intoxication and conspired to retaliate against Plaintiff.  This Court has already granted Defendant Steinaway's unopposed Motion for Summary Judgment.

**2007 Lawsuit Against Defendant Pasenski**

Plaintiff alleges that he instituted an action against Pasenski on November 1, 2007, to "recover a letter written to plaintiff by a deceased friend . . . ."  Plaintiff alleges that Pasenski refused to turn the letter over.  Plaintiff alleges that Pasenski retained the law firm of Defendant Lavan to defend himself in the civil suit.  Plaintiff alleges that Pasenski retained Lavan "for the purpose of joining forces with defendants Lavan, Burress and Cremonte to concoct a scheme to frame plaintiff . . . ."  Plaintiff alleges that his case was dismissed because he was unable to prosecute the case during his later incarceration.

Pasenski is mentioned later in Plaintiff's complaint as allegedly paying a confidential informant to testify against Plaintiff in conspiracy with Defendants Corriveau, Lavan, and Burress. The only other mention of Pasenski's name in the complaint is Plaintiff's allegation that "Defendant Burress told plaintiff, among other things, that he acted jointly with defendants Lavan, Pasenskie [sic] and Cremonte to frame plaintiff . . . ."  Plaintiff brings claims of conspiracy and retaliation against Pasenski.

**2007 Arrest by Defendant Corriveau**

On December 11, 2007, allegedly the same day as a hearing in Plaintiff's lawsuit against Defendant Pasenski, Defendant Corriveau and another police officer were involved in a traffic stop of Plaintiff's car.  During the traffic stop and subsequent search, the officers discovered Plaintiff was in possession of 10 morphine pills in a prescription bottle in Tom Bickman's name.  Defendant

5

Corriveau stated that he had received information from a confidential informant that Plaintiff intended to deliver the pills to a Tom Larson in exchange for $25. Plaintiff was charged with intent to deliver a controlled substance.

Tom Larson testified against Plaintiff a trial. Plaintiff did not call any witnesses. Plaintiff alleges that his counsel stated that he mailed subpoenas to various defense witnesses but none responded. After a jury trial, Plaintiff was convicted of the lesser included offense of possession of a controlled substance and sentenced to one year in prison.

After Plaintiff was released from prison, he alleges he spoke with a number of the parties involved, all who revealed information about a conspiracy. Plaintiff claims he spoke to Tom Larson, who told him that he had been intimidated by Defendant Corriveau into testifying against Plaintiff. Plaintiff alleges that Larson told him that he did not have the $25 allegedly promised to pay for the morphine pills in Plaintiff's possession. Plaintiff also alleges that Larson told him Defendant Corriveau had threatened to put Larson in jail if he provided an affidavit to Plaintiff.

Plaintiff alleges that Mike Bickman, Tim Bickman's brother, revealed to him that Tom Bickman had planted the morphine pills in Plaintiff's car on the night before Plaintiff's arrest. Plaintiff alleges Tom Bickman and Pasenski were friends.

Plaintiff alleges that Kelly Dorsey, an acquaintance of his, told him that she had spent time in jail with Defendant Cook, who Plaintiff alleges was a confidential informant of Defendant Corriveau. Plaintiff alleges that Cook revealed that she had been paid by Defendant Pasenski and promised leniency in criminal matters by Defendant Corriveau in exchange for helping in "framing" Plaintiff. Plaintiff alleges that this plot was "under orchestration" of Defendant Pasenski "to derail the litigations plaintiff had pending against defendants Burress, Lavan, and Pasenskie [sic]."

6

Plaintiff alleges that Defendant Cook reiterated the above information and revealed to Plaintiff that Defendant Corriveau had told her that the judge in his latter criminal trial, Judge Brennan, had been "prearranged" and had deliberately set bond at a high amount "to hinter plaintiff from defending himself . . . ." Plaintiff does not allege the mastermind of this aspect of the plot.

Finally, Plaintiff claims that he spoke to Defendant Burress, who told Plaintiff that Burress, Lavan, Pasenski, and Cremonte had all acted together to frame Plaintiff and to orchestrate the assignment of Judge Brennan to Plaintiff's case. Plaintiff alleges that Burress told him that "Judge Brennan's actions were in reaction to the litigations plaintiff instituted against defendant Burress and the other defendants."

## Standard of Review

At the motion to dismiss stage, this Court is required to treat Plaintiff's well-pled allegations as true. However, the Supreme Court has held that a plaintiff's obligation to "provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that the allegations in the complaint are true." *Id.* The complaint must allege facts that "nudge" the plaintiff's claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951-52 (2009).

## Analysis

### Motions to Dismiss [13], [18], [21], [46]

Plaintiff's claims of Conspiracy and Retaliation against the above-named defendants all arise out of the same facts. Plaintiff alleges a conspiracy involving all of the above Defendants, the primary purpose of which was to frame Plaintiff for possession of narcotics so that Plaintiff would

go to jail as retaliation for Plaintiff's civil lawsuits against the various Defendants.  As phrased by Plaintiff, "Defendants conspired with each other by framing plaintiff by knowingly causing false charges to be brought against plaintiff . . .  Defendants agreed with each other upon a single plan to injure plaintiff . . . ."  Compl. ¶¶ 91-92.  Plaintiff alleges that as a result of the conspiracy and retaliation he suffered "fear, anxiety, emotional and mental pain and suffering, loss of liberty, and interference with his exercise of Constitutional rights."  Compl. ¶ 83.

Plaintiff's claims of conspiracy and retaliation run afoul of the *Heck* doctrine, set out in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the United States Supreme Court held that a plaintiff may not bring a civil rights claim which would necessarily involve the invalidation of a state law conviction or sentence.

> "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of a habeas corpus . . . [a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."

*Heck*, 512 U.S. at 486-87 (emphasis in original).

*Heck* has been applied in this circuit.  *See, e.g., Shilling v. White*, 58 F.3d 1081 (6th Cir. 1995) (affirming dismissal of civil rights action for alleged violation of Fourth Amendment rights due to search of vehicle prior to arrest where appellant's conviction had not been set aside); *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005) (holding that § 1983 claim for excessive force against police officer could not continue due to state conviction of assault).  Indeed, *Heck* not only mandates dismissal of a case, but "*den*[*ies*] *the existence of a cause of action*" unless the underlying conviction has been reversed, expunged, invalidated, or cast into doubt by grant of writ of habeas corpus.  *Schilling*, 58 F.3d at 1087 (emphasis in original).

8

In the instant suit, Plaintiff bases his claims of conspiracy and retaliation on his December 11, 2007, arrest and subsequent incarceration. Despite Plaintiff's protestations of innocence, allegations that he was "framed," and alleged statements by numerous witnesses and defendants to Plaintiff stating that a conspiracy to frame him by placing morphine pills in his car existed, the *Heck* doctrine nevertheless applies to bar his suit. This is because, if Plaintiff's theory regarding the conspiracy in his complaint is true, it would necessarily imply the invalidation of Plaintiff's conviction for possession of a controlled substance, as Plaintiff would have lacked the necessary *mens rea* to knowingly possess the controlled substance in question.

Plaintiff argues that his acquittal for possession of a controlled substance with the intent to deliver makes *Heck* inapplicable. Plaintiff argues that he was framed for the lesser possession charge. However, he also argues, apparently contrary to the complaint (in which it seems that Plaintiff was not aware of the pills until his car was searched), that he testified at his criminal trial that he had discovered the pills after leaving the courthouse on December 11, 2007 and prior to the stop by police. Plaintiff claims that he testified that he intended to return the pills to Thomas Bickman "and assumed at the time that the pills were inadvertently left in the car." Plaintiff claims that the jury "could have, and most likely did, believe that the pills in question were in fact planted in Plaintiff's car but that Plaintiff's failure to immediately return them upon discovering them constituted the offense of unlawful possession of the pills." The Court first notes that Plaintiff did not enter the transcript of his criminal trial into evidence before the Court, and Plaintiff's references to his testimony at a criminal trial are not in his complaint. Thus, Plaintiff's facts are not properly before the court.

Nevertheless, even assuming Plaintiff accurately describes his testimony, revelations that the morphine was planted in Plaintiff's car would still require invalidation of his conviction, as Mich.

9

Comp. L. § 333.7403 prohibits only "knowingly or intentionally" possessing a controlled substance.

As discussed by the Michigan Court of Appeals:

> [T]he words "knowingly" and "intentionally" are synonymous . . . Black's Law
> Dictionary (7th ed) . . . define[s] "knowing" as "[h]aving or showing awareness or
> understanding; well-informed ... deliberate; conscious." Similarly, Random House
> Webster's College Dictionary (2001) defines "knowing" in pertinent part as
> "conscious," "intentional," and "deliberate." . . . this Court has repeatedly concluded
> that a crime that is required to be committed 'knowingly' is a specific intent crime.

*People v. Maynor*, 662 N.W.2d 468, 471 (Mich. App. 2003) (internal citations omitted).

Here, Plaintiff insists that he was framed and states that he testified that he intended to return the morphine to its rightful owner. Such an argument would require the invalidation of Plaintiff's state-law conviction for possession of a controlled substance as Plaintiff would not have had the necessary intent to deliberately possess the morphine. Plaintiff would have lacked the requisite intent to "possess" the controlled substance in any meaningful sense, as it was his claimed intention to return the morphine as soon as possible. To find Plaintiff guilty beyond a reasonable doubt of the "knowing and intentional" possession of a controlled substance, the jury would have had to discount Plaintiff's theory that he intended to return the morphine to Tom Bickman. Thus, Plaintiff instant suit would necessarily invalidate his state conviction, in violation of the *Heck* doctrine.

Plaintiff must have his conviction overturned on direct appeal or bring a petition for a writ of habeas corpus prior to instituting a § 1983 action. This has not occurred. Accordingly, Defendants' Motions to Dismiss [13], [18], [21], [46] are GRANTED. Moreover, given Plaintiff's repeated lawsuits against Defendants, and the use of Plaintiff's previous lawsuits as Plaintiff's rationale for Defendants' alleged "retaliation" against Plaintiff, the Court finds that the instant lawsuit is frivolous, malicious, and without merit.

10

**Defendants Daniels Burress, Thomas Cremonte, Leslie, and William Vailliencourt's Motion for Permanent Injunction [14] and Motion for Sanctions [17], Defendant Lavan's Motion for Permanent Injunction [19]**

The above-named Defendants move the court to permanent enjoin Plaintiff from filing "vexatious and frivolous" litigation and request sanctions pursuant to Federal Rule of Civil Procedure 11. Defendants cite to a history of litigation on the part of Plaintiff involving repeated lawsuits against the same or similar defendants. In particular, the Defendants attach docket sheets from the United States Court of Appeals for the Sixth Circuit (showing 50 appeals filed by a David J. Scott), the Western District of Michigan (showing 23 actions filed by a David J. Scott), and the Michigan Court of Appeals (showing 86 appeals filed by a David J. Scott). The Defendants also point to a 1997 order prohibiting Plaintiff from filing lawsuits in Michigan Circuit Courts or Courts of Claim without permission, discussed above.

This Court has also independently reviewed the docket Eastern Districts of Michigan and found numerous cases in which Plaintiff's cases have been dismissed as frivolous and/or malicious, in which Plaintiff has been refused *in forma pauperis* status, and in which Plaintiff has been required to pay the costs of the defendants. These cases include: *Scott v. Rumsey, et al.*, Case No. 91-cv-00138 (W.D. Mich. 1991) (dismissed as frivolous); *Scott v. Johnson, et al.*, Case No. 95-cv-00403 (W.D. Mich. 1995) (dismissed as frivolous), *aff'd,* 1997 WL 133317 (6th Cir. 1997) (affirmed as frivolous); *Scott v. Hinton*, Case No. 97-cv-72900 (E.D. Mich. 1997) (dismissed as frivolous); *Scott v. Evans, et al.*, Case No. 01-cv-10274 (E.D. Mich. 2001) (*in forma pauperis* status revoked because of previous three strikes, summary judgment ultimately granted against plaintiff), *aff'd,* Case No. 06-1799 (6th Cir. 2007); *Scott v. Martin, et al.*, Case No. 02-cv-72302 (E.D. Mich. 2002) (revoking *in forma pauperis* status, finding Plaintiff's claims frivolous, dismissing case, and denying *in forma pauperis* appeal); *Scott v. Stone, et al.*, Case No. 03-cv-70523 (E.D. Mich. 2003) (*in forma pauperis*

inadvertently granted and later revoked, case dismissed under "three strikes provision"); *Scott v. Freed*, *et al.*, Case No. 04-70714 (E.D. Mich. 2004) (*in forma pauperis* status revoked, dismissed under "three strikes" rule, defendants ultimately granted summary judgment); *Scott v. Wenzel, et al.*, Case No. 05-cv-70018 (E.D. Mich. 2005) (*in forma pauperis* denied, case dismissed under "three strikes" provision), *aff'd,* Case No. 05-1797 (6th Cir. 2006); *Scott v. Stone, et al.*, Case No. 09-cv-12129 (E.D. Mich. 2009) (requiring plaintiff to pay filing fees, requiring plaintiff to pay costs of voluntarily dismissed previous case because of refiling on same day as dismissal, judgment for defendants at jury trial), *aff'd,* Case No. 11-1003 (6th Cir. 2012).

This Court undoubtedly possesses the discretion to enjoin Plaintiff from filing lawsuits without leave of the court.  *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998).  However, the court does not believe such a drastic remedy is needed at this time.  Defendants' Motions for a Permanent Injunction [14] and [19] are DENIED.

As to Defendants' Motion for Sanctions [17], the Court is cognizant that Defendants have defended multiple suits by Plaintiff that have previously been dismissed.  The Court is also cognizant of Plaintiff's long history of failed lawsuits and repeated appeals.  Further, the Court has already found, above, that the instant suit is frivolous and malicious.

Rule 11 provides that:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically
so identified, are reasonably based on belief or a lack of information.
Fed. R. Civ. P. 11(b)

In addition, Fed. R. Civ. P. 11(c) allows for the imposition of sanctions for violation of 11(b) if the target of the sanctions has been given notice and a reasonable opportunity to respond. Here, Defendants filed a motion for sanctions and Plaintiff has responded. In response to Defendants' attached docket searches of Plaintiff's various filings in Michigan and Federal courts, Plaintiff neither admits nor denies the allegations. Plaintiff also criticizes the 1997 order that required him to obtain permission prior to filing claims in the Michigan courts and notes that the decision is on appeal; said appeal has since been decided against Plaintiff. Plaintiff also alleges in his response that the Defendant in his state case on appeal "is socially close to Defendant Burress." Finally, Plaintiff repeats his argument regarding a conspiracy to frame him for possession of controlled substances.

As noted above, the Court has already concluded that Plaintiff's claims are frivolous and malicious, and Plaintiff's response does not affect this conclusion. Indeed, Plaintiff's claims that he has never "instituted litigation without a good faith belief it had merit" are belied by his repeated lawsuits and the findings of numerous courts that his past claims have been frivolous and/or malicious in nature.

Accordingly, Defendants' Motion for Sanctions [17] is GRANTED. Attorney's fees and costs are awarded to Defendants Burress, Cremonte, Leslie and Vailliencourt. Defendants will submit a detailed explanation of their costs and fees to the Court for final approval.

**Defendant Susan Cook**

The Court notes that, while Defendant Cook was served summons on May 31, 2011, she has yet to submit an Answer. However, pursuant to 28 § U.S.C. 1915(g), as Plaintiff has proceeded *in*

13

*forma pauperis* in this case and has, on three or more prior occasions brought an action or appeal that was dismissed on grounds that it was frivolous, malicious, or failed to state a claim, this Court may dismiss Plaintiff's case as it lacks merit. A federal court may *sua sponte* raise the three strikes provision of 28 U.S.C. § 1915 on its own initiative. *Witzke v. Hiller*, 966 F. Supp. 538, 539 (E.D. Mich. 1997). The Court therefore DISMISSES Plaintiff's claims against Susan Cook.

### Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants Daniel Burress, Thomas Cremonte, Leslie, and William Vailliencourt's Motion to Dismiss [13], Defendant Brian Lavan's Motion to Dismiss [18], Defendant Jim Pasenski's Motion to Dismiss [21], and Defendant Christopher Corriveau's Motion to Dismiss [41] are **GRANTED**. Defendant Daniel Burress, Thomas Cremonte, Leslie, and William Vailliencourt's Motion for Permanent Injunction [14], and Defendant Brian Lavan's Motion for Permanent Injunction [19] are **DENIED**. Plaintiff's claims against Defendant Cook are **DISMISSED**.

Defendants Daniel Burress, Thomas Cremonte, Leslie, and William Vailliencourt's Motion for Sanctions [17] is **GRANTED**. Attorney's fees and costs are awarded to Defendants Burress, Cremonte, Leslie and Vailliencourt. Defendants will submit a detailed explanation of their costs and fees to the Court for final approval.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: March 29, 2012                Senior United States District Judge

**CERTIFICATE OF SERVICE**
I hereby certify on March 29, 2012 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 29, 2012: None.         s/Michael E. Lang
Deputy Clerk to
District Judge Arthur J. Tarnow
(313) 234-5182